UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DOMINIQUE PHILLIPS,

                      Plaintiff,                    **REPORT AND**
                                                    **RECOMMENDATION**
                                                      CV 13-7317 (JS)(ARL)
            -against-

THE LONG ISLAND RAIL ROAD COMPANY,

                      Defendant.
------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

       Plaintiff Dominique Phillips ("Plaintiff") brings this action against defendant Long Island

Railroad Company ("LIRR" or "Defendant") alleging, inter alia, that Defendant discriminated

against him on the basis of his race subjecting him to a hostile work environment, disparate

treatment, and disparate impact, retaliating against him because of complaints about

discrimination and for using leave time and discriminated against him because of his disability.

Before the Court, on referral from District Judge Seybert, is the motion by Defendant for

summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.  For the reasons set

forth below, the Court respectfully recommends that Defendant's motion be granted.

## BACKGROUND

I.     **Procedural History**

       On August 21, 2013, Plaintiff filed a charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC") alleging that he was subjected to unlawful

discrimination and retaliatory labor practices stemming from his initiation of a lawsuit against

the LIRR to recover for an injury he sustained while on the job in August 2009.  *See* Plaintiff's

Affidavit in Opposition of Defendant's Motion For Summary Judgment ("Pl. Aff.") at Ex. 22.

Plaintiff received a right to sue letter on September 23, 2013. *Id.* at Ex. 24. Plaintiff has not filed charges of discrimination with the New York City Commission on Human Rights or the New York State Division of Human Rights. Plaintiff filed his first Complaint in this Court on December 23, 2013 asserting job discrimination claims against the LIRR and United Transportation Union-Local 722 ("Union"). ECF No. 1. Plaintiff filed an Amended Complaint on March 30, 2015. ECF No. 23. By Order dated April 2, 2015, this Amended Complaint was rejected by the Court because Plaintiff had failed to seek leave to file the Amended Complaint.

On October 16, 2015, Plaintiff filed a Third Amended Complaint.[1] ECF No. 58. Plaintiff dropped all claims against the Union from the Third Amended Complaint, which was prepared with the assistance of counsel and asserts twelve causes of action.[2] ECF No. 58. Plaintiff asserts claims for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. including claims for Hostile Work Environment (Count I), Disparate Treatment (Count II), Disparate Impact (Count III) and Retaliation (Count IV); violation of the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. for retaliation and discrimination (Count V); violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (Count VI); discrimination under the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117 ("ADA") (Count VII); violation of the New York State Human Rights Law (the "NYSHRL"), N.Y. Executive Law § 296 (McKinney's 2005) (Count VIII); and

---

[1] No Second Amended Complaint was ever filed.

[2] Although Plaintiff initially filed this action *pro se*, Plaintiff retained counsel on July 21, 2015. On January 12, 2016, Plaintiff's counsel moved to be relieved on the grounds that there had been a significant communication breakdown between the attorney and client regarding the "direction and overall objectives of the action." ECF No. 69. Following a hearing, that motion was denied by Judge Seybert on February 26, 2016. Plaintiff's counsel again moved to be relieved as counsel on September 16, 2017 citing a significant communication breakdown. ECF No. 103. Judge Seybert granted counsel's motion on October 12, 2017. ECF No. 110. Plaintiff was granted a 45-day extension of time to obtain replacement counsel. *Id.* To date, replacement counsel has not appeared on Plaintiff's behalf and his opposition to Defendant's motion for summary judgment was filed *pro se*, however, Plaintiff's Response and Counterstatement To Defendant's Rule 56.1 Statement of Material Facts ("Pl. Rule 56.1 Statement") dated January 9, 2017 and attached as Ex. 28 to Pl. Aff. indicates it was prepared by Plaintiff's former counsel.

violation of the New York City Human Rights Law, N.Y.C. Admin. Code ("NYCHRL") § 8-101 (Count IX- Race Discrimination), § 8-107(7) (Count X- Retaliation), § 8-107(1)(b) (Count XI- Race-Based Discrimination), and § 8-107(17)(A)(2) (Count XII-Disparate Impact).   Boiled down, Plaintiff charges Defendant with discriminatory conduct under a variety of federal and state statutes all arising out of the same alleged wrongful conduct.

Defendant moved for summary judgment on each of Plaintiff's claims on February 12, 2018 seeking dismissal of Plaintiff's Third Amended Complaint based upon procedural deficiencies and on the grounds that based upon the undisputed facts no reasonable jury could conclude that the LIRR discriminated or retaliated against Plaintiff.  In support of the motion, Defendant relied upon the Declaration of Brian K. Saltz dated September 21, 2016 ("Saltz Decl.") and the Memorandum of Law In Support of Defendant's Motion for Summary Judgment ("Def. Mem.").  ECF No. 116.  Plaintiff responded to Defendant's motion for summary judgment on May 9, 2018.  Plaintiff relies upon Plaintiff's Affidavit in Opposition of Defendant's Motion for Summary Judgment and Plaintiff's Memorandum of Law In Opposition Of Defendant's Motion For Summary Judgment.  ECF No. 126.  On May 23, 2018, Defendant submitted a Reply Memorandum of Law In Support of Defendant's Motion For Summary Judgment ("Def. Reply Mem.").  ECF No. 127.  Plaintiff filed a supplemental response to Defendant's motion for summary judgment on May 29, 2018 consisting of an additional 217 pages of exhibits in opposition to Defendant's motion for summary judgment.  ECF No. 129.  By letter dated June 7, 2018, Defendant advised the Court that no additional response to Plaintiff's supplemental opposition was necessary.  ECF No. 130.  By Order dated April 25, 2018, Defendant's motion for summary judgment was referred to the undersigned to issue a Report and Recommendation.  ECF No. 122.

II.   **Factual Background**

The following facts are drawn from the parties' Local Rule 56.1(a) Statements and are uncontested unless otherwise noted.[3]

A.  **Employment History**

Plaintiff, an African-American male, was first employed by the LIRR in February 2006. Def. Rule 56.1 Statement ¶¶ 1, 4.  Plaintiff's only position at the LIRR was car appearance maintainer.  In that position, he was responsible for cleaning, sweeping, mopping, and maintaining the interior of the trains.  *Id*. at ¶ 5.  Plaintiff worked at four LIRR yards - West Side Yard, Jamaica Yard, Hillside Yard, and Hempstead Yard.  *Id*. at ¶ 6.

Plaintiff worked at the Hempstead Yard from October 2007 until October 2, 2012, with the exception of the period from October 2010 to January 2011, when he worked at Hempstead Station platform.  *Id.* at ¶¶ 8, 26.  Plaintiff was injured on the job in August 2009, placed on restricted duty after the injury, and had shoulder surgery in November 2009.  *Id*. at ¶ 9.  Plaintiff was out of work from November 2009 until September 2010, but was paid his salary during his time out of work.  *Id*. at ¶ 10.  Plaintiff filed a lawsuit against the LIRR as a result of the August 2009 injury. *Id*. at ¶ 11.  Plaintiff alleges in the Third Amended Complaint that he "suffers from a qualified disability and was a qualified individual capable of performing the essential job functions of the job prior to his work-related injury and subsequent disability."  3rd Am. Compl. ¶ 15. It appears that Plaintiff's shoulder injury is the disability he is referring to as nothing else is referenced in the complaint.

---

[3] Plaintiff's response To Defendant's Rule 56.1 Statement of Material Facts refers to a Declaration in Support of Chauncey D. Henry, which was never filed with the Court.  It appears Plaintiff's Rule 56.1 Statement was prepared by Plaintiff's former attorney, before being relieved as counsel, since it is dated January 9, 2017 and presumably was prepared in anticipation of the pre-motion conference before Judge Seybert on February 3, 2017.  It appears that the reference to Exhibit N to the Chauncy Declaration is referring to portions of Plaintiff's deposition which is attached to the Saltz Declaration.

Plaintiff alleges that the discrimination and harassment he experienced at work began upon his return from disability leave in September 2010 while at the Hempstead Yard. Plaintiff's Rule 56.1 Statement ¶ 83.  According to Plaintiff, he did not receive the work responsibilities that he should have received based upon his seniority.  Def. Rule 56.1 Statement at ¶ 12.  Plaintiff claims that gang foreman Frank Angiuli favored car appearance maintainer Keith Heyward, who is white.  *Id.* at ¶ 19.  Plaintiff contends that this co-worker, with less seniority, was assigned to clean the front of the glass of the train , perform paper runs, clean bathrooms, and to obtain supplies. [4]  *Id.* at ¶ 13.  Plaintiff was unaware of any written policy providing that those with more seniority were entitled to these assignments.  In fact no such policy existed and according to the Chairman of the Gang Foremen's Union gang foremen have the right to distribute work at their discretion.  *Id.* at ¶ 15.  Plaintiff nonetheless asserts that while there was no written policy it was his belief that it was customary for such assignments to be made on the basis of seniority. Pl. Rule 56.1 Statement at ¶ 84.  Plaintiff, however, admits that he was also assigned to clean bathrooms from time to time.  Def. Rule 56.1 Statement at ¶ 18.  Moreover, Plaintiff also acknowledges that Alberta Hunt, an African-American woman, was often assigned to cleaning bathrooms.  Saltz Dec., Pl. Dep. at 45-46.

Plaintiff alleges that in September 2010 foreman Angiuli required Plaintiff to clean trains using an orange scented cleaner and if the scent was not strong enough he was required to reclean the train.  3rd Am. Compl. at 26.  At his deposition, Plaintiff admitted that he was not disciplined for this action and that all car appearance maintainers, regardless of race, were required to use the orange scented cleaner.  Def. Rule 56.1 Statement at ¶¶ 24, 25.

---

[4] In his response to Defendant's motion for summary judgment Plaintiff asserts that it was gang foreman Wittneben who assigned Heyward the job of cleaning the bathrooms, which Plaintiff believed he was entitled to based upon seniority.  Pl. Mem at 4.

In support of his charge of discrimination, Plaintiff also alleges that while working at the Hempstead Station platform in September 2010,[5] he and Jesse Ward - another car appearance maintainer - decided that they would use their own system to clean the trains. Under their improvised team system, Plaintiff cleaned the first three trains then Ward cleaned the next three trains and both of them cleaned the final train together. *Id*. at ¶ 27. While Ward was cleaning his trains, Plaintiff would hang out in his car in the commuter parking lot. *Id*. at ¶ 28. This "system" was not adopted by the other two teams of car appearance maintainers who worked at the platform. *Id*. at ¶ 29. When Gang foreman Angiuli learned of this he changed Plaintiff's "team system" of cleaning the trains. *Id*. at ¶ 30. Although Plaintiff admits that other car appearance maintainers who worked at the platform did not use this system to clean their trains, in the Third Amended Complaint Plaintiff alleges that similarly situated non-African-American employees were not subjected to this scrutiny or differing terms of employment. 3rd Am. Compl. at ¶ 27. Plaintiff claims that he reported these incidents to his Union, although he did not report them to the LIRR. *Id*. at 31.

According to Plaintiff, Mr. Wittneben, a white male employee of the LIRR, became the supervisor and gang foreman for the Hempstead Yard in May 2011. Pl. Rule 56.1 Statement at ¶ 88. Plaintiff believes that gang foreman Wittneben favored Heyward and Cheryl Fearrington, an African-American, and claims that both of them were treated more favorably than he was. Def. Rule 56.1 Statement at ¶ 20. Plaintiff also states that gang foreman Wittneben harassed Michael Pairan, another LIRR employee, who is white. *Id*. at ¶ 22.

In further support of his claim of discrimination, Plaintiff alleges that in November 2011

---

[5] Plaintiff alleges that this incident occurred in September 2010 while at the Hempstead Station platform, however, according to his deposition testimony, Plaintiff was not assigned to the Hempstead Station platform until October 2010. *Compare* 3rd Am. Compl. ¶ 27 *with* Def. Rule 56.1 Statement at ¶ 8.

gang foreman Wittneben directed Plaintiff to use a defective mop to clean the train.  Saltz Dec., Pl. Dep. at 40-41.  Plaintiff acknowledges that from time to time all other employees, possibly including Heyward (the only white employee) used the mop with the defective handle.  *Id.* at 41-42.  Plaintiff further claims that in December 2011, gang foreman Wittneben issued Plaintiff a warning for failing to park in the employee parking lot.  Pl. Rule 56.1 Statement ¶ 100.  According to Plaintiff, this warning was retaliatory because Plaintiff had been permitted to park in the commuter parking lot rather than the employee parking lot from 2007 through 2011.  *Id.* at ¶ 101.  In an e-mail sent to John P. Failla from gang foreman Wittneben on December 16, 2011, there is an indication that three employees were cited that evening for not being in the employee parking lot that evening, not just Plaintiff.  Pl. Aff., Ex. 43, Tab N.

Plaintiff also bases his claim of discrimination on a perceived unfair distribution of the weekly workload.  3rd Am. Compl. at ¶ 32.  Plaintiff claims that under gang foreman Wittneben's supervision he was assigned to clean between 18 and 24 cars over a three-day period, while Heyward - who is White - was only assigned to clean six to eight cars.  Def. Rule 56.1 Statement at ¶ 36.  Plaintiff admits, however, that Adrian Morris - who is African American - was also assigned to clean only six to eight cars.  *Id.* at ¶ 37.  Plaintiff acknowledges that in addition to Morris there were at least 2 other African American employees whose workload was less than his.  Pl. Dep. At 82-85.  Plaintiff claims that he reported these incidents to the LIRR.  *Id.* at ¶ 38.

In March 2012, Michael Denn, Local Chairman for the Union, wrote to Daniel G. Cleary, Chief Mechanical Officer for the Hillside Maintence Yard of the LIRR advising Defendant that Plaintiff was suffering from "extreme emotional stress and anxiety that his treating physicians relate to work situations."  Pl. Aff., Ex. 43, Tab U.  According to the letter sent by Mr. Denn, Plaintiff "claims his gang foreman at the Hempstead Yard is harassing him and causing this

stress by changing his job assignment," including not allowing him to clean bathrooms.  *Id.*  The LIRR responded to this letter by advising Mr. Denn that Marilyn Kustoff was instructed to immediately commence an investigation of the claims made by Plaintiff.  *Id.*  In connection with this investigation, Ms. Kustoff sought to interview Plaintiff.  Pl. Dep. at 89.  Plaintiff refused to meet with Ms. Kustoff.  *Id*. at 167-68.  Plaintiff also refused to meet with Michael Fyffe, director of Diversity Management for the LIRR.  *Id*. at 90.  On July 3, 2012, the LIRR advised the Union that since Plaintiff had refused to be interviewed by LIRR representatives Defendant concluded that Plaintiff "does not desire the Long Island railroad to investigate or address his complaint."  Pl. Aff., Ex. 43, Tab V.

**B.  Plaintiff's History of Absenteeism**

Upon his return from disability leave in September 2010, Plaintiff was cited for a number of violations of Defendant's absence control policy.

- On March 28, 2011, the LIRR issued Plaintiff a notice of an internal trial due to his violation of LIRR's absence control policy during the period from January 2011 to February 28, 2011.  Def. Rule 56.1 Statement at ¶ 32; Saltz Dec., Ex. E to Pl. Dep. (Case number 9237).  On April 28, 2011, Plaintiff waived his right to an internal trial and was issued a reprimand.  Def. Rule 56.1 Statement at ¶ 33.

- On December 15, 2011, the LIRR issued Plaintiff another notice of an internal trial due to a violation of the LIRR's absence control policy during the period from April 1, 2011 to November 30, 2011.  *Id*. at ¶ 42; Saltz Decl., Ex. G to Pl. Dep. (Case No. 9509).  The trial on this violation was originally scheduled for January 13, 2012.  *Id*.  After a series of extension requests made by Plaintiff, the trial was held on October 3, 2012, Plaintiff was found guilty and issued a 20-day suspension.  Def. Rule 56.1 Statement at ¶ 43.  The Union appealed that

8

decision to a neutral arbitration panel. *Id*. at ¶ 44. On June 5, 2015, the arbitration panel concluded that LIRR "met its burden of proof that [Plaintiff] violated its attendance policy," although it modified the discipline to a reprimand and final warning. *Id*. at ¶ 45.

- On January 19, 2012, the LIRR issued Plaintiff a third notice of an internal trial due to yet another violation of the LIRR's absence control policy during the period from December 1, 2011 to December 31, 2011. *Id*. at ¶ 49; Saltz Dec., Ex. U to Pl. Dep. (Case No. 9546). The trial on this violation was originally scheduled for February 24, 2012. *Id*. After a series of extension requests made by Plaintiff, the trial was held on October 3, 2012, Plaintiff was found guilty and received a 45-day suspension. *Id*. at ¶ 50. The Union appealed that decision to a neutral arbitration panel. *Id*. at ¶ 51. On June 5, 2015, the arbitration panel concluded that the LIRR "met its burden of proof that Plaintiff violated its attendance policy," although it modified the discipline to a 20-day suspension." *Id*. at ¶ 52.

- On April 20, 2012, the LIRR issued Plaintiff a fourth notice of an internal trial due to a violation of the LIRR's absence control policy. *Id*. at ¶ 57. The notice stated:

  "Violation of the Corporate Absence Control Policy (AWOL); in that, on April 17, 18, 19 and 20, 2012, you were assigned  to work in Hempstead Yard as a Car  Appearance Maintainer from 12:30 am to 8:30 am. On April 17, 18, 19, and 20,  2012, you failed to appear for duty and you failed to notify the appropriate supervisor (Central Manpower) that you would not be reporting for duty on April 17, 18, 19 and 20, 2012"

  *Id*., Saltz Dec., Ex. N to Pl. Dep. (Case No. 9597). Plaintiff agrees that he did not appear for work on April 17, 18, 19, or 20, 2012. Def. Rule 56.1 Statement at ¶ 57. Plaintiff also agrees that he did not call Central Manpower on those dates,

although he claimed that he called "Dee" (last name unknown) in Central Manpower a month prior to that and she told him that they already knew that he was out for medical reasons and did not need to call. *Id.* at ¶ 59. The trial on this violation was originally scheduled for May 16, 2012. *Id.* After a series of extension requests made by Plaintiff, the trial was held on December 3, 2012, Plaintiff was found guilty and was terminated for this violation. *Id.* at ¶ 61. The Union appealed this December 3, 2012 termination to a neutral arbitration panel. *Id.* at ¶ 62. On June 2, 2015 the arbitration panel upheld Plaintiff's termination. *Id.*

- On May 29, 2012, the LIRR issued Plaintiff a fifth notice of internal trial due to another violation of the LIRR's absence control policy during the period from February 1, 2012 to April 30, 2012. *Id.* at ¶ 53, Saltz Dec., Ex S to Pl. Dep. (Case No. 9629). The trial on this violation was originally scheduled for June 29, 2012. *Id.* After a series of extension requests made by Plaintiff, the trial was held on October 26, 2012, and following the trial, Plaintiff was terminated. *Id.* at ¶ 54. Prior to this termination for violation of the absence control policy, Plaintiff had received a reprimand, a 20-day suspension reduced by an arbitrator to a reprimand and final warning and a 45-day suspension reduced by an arbitrator to a 20-day suspension. *Id.* at ¶ 55.

On June 2, 2015 the arbitration panel, in upholding Plaintiff's termination, concluded that "the record contains credible and reliable evidence that [Plaintiff] violated [LIRR's] rules." It further stated as follows:

> We reject the [Union's] valiant arguments that [Plaintiff] followed the proper procedures when he left his work location, went to [LIRR's] medical facility, and failed to appear for work for four (4) days without notifying his appropriate supervisor. Given [Plaintiff's] extensive disciplinary record regarding excessive

10

> absenteeism it is incomprehensible that he was unaware of his responsibility to inform [LIRR] of his plan not to appear for work.
>
> There is nothing in the record to indicate that [LIRR] abused its discretion in assessing the penalty imposed and therefore find no grounds to alter the decision to dismiss [Plaintiff]. There is ample arbitral precedent that were there is no abuse of discretion the penalty imposed by the Carrier should not be disturbed. [Plaintiff] has amassed an extensive disciplinary record of violating [LIRR's] attendance rules, over a short period of employment - 6 years - and has been afforded ample opportunity to rehabilitate his poor performance. The record contains substantial evidence that [Plaintiff] violated [LIRR's] Absence Control Policy and continued to ignore warnings regarding his excessive absenteeism"

*Id*. at ¶ 64; Saltz Dec., Ex. CC to Pl. Dep.

In addition to the five employment actions pursued by the LIRR, Plaintiff was also cited for a number of other violations for which the LIRR did not purse an internal trial including, an absent without leave on January 10, 2012 (*Id*. at ¶ 45); an unexplained absences on April 30, 2012 (*Id*. at ¶¶ 69 70 ); unexplained absences on April 23, 24, 25, 26, and 27, 2012 (*Id*. at ¶ 64); and insubordination for refusing to clean a train and leaving the facility on October 2, 2012 (*Id*. at ¶¶ 70. 71).

## DISCUSSION

### I. Standard of Law

#### A. **Summary Judgment**

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether an issue is

genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)); *see Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010) (same).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted). However, "the judge's role in reviewing a motion for summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

"When the party opposing summary judgment is *pro se*, the Court must read that party's papers liberally and interpret them 'to raise the strongest arguments that they suggest.'" *Ayazi v. United Fed'n of Teachers, Local 2*, No. 99 CV 8222, 2011 WL 888053, at *6 (E.D.N.Y. Mar. 14, 2011) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). "[H]owever, a *pro se* party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a

motion for summary judgment." *Ayazi*, 2011 WL 888053, at *6 (citing *Thompson v. Tracy*, No. 00 CV 8360, 2008 WL 190449, at *5 (S.D.N.Y. Jan.17, 2008)); *Chiari v. N.Y. Racing Ass'n, Inc.*, 972 F. Supp. 2d 346, 361 (E.D.N.Y. 2013).

### B. McDonnell-Douglas Burden-Shifting Framework

In the absence of direct evidence of discriminatory conduct, Plaintiff's claims for employment discrimination under Title VII[6], the FMLA[7], the ADA[8], NYSHRL[9] and the NYCHRL[10] based on race and disability are analyzed under the three step, burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010); *see also Gannon v. United Parcel Serv.*, No. 12-3556-cv, 529 Fed. Appx. 102, 2013 U.S. App. LEXIS 14319, 2013 WL 3603432, at *1 (2d Cir. July 16, 2013). Under McDonnell Douglas and its innumerable progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the McDonnell Douglas framework and its presumptions and burdens disappear, and, thus, (3) the burden shifts back to the plaintiff to show that the employer's reason is pretextual and that it masks the employer's true

---

[6] *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).
[7] *Polanco v. Active Ret. Cmty., Inc.*, No. CV 14-4145 (SJF)(ARL), 2015 U.S. Dist. LEXIS 192207, 2015 WL 12564206 (E.D.N.Y. Dec. 21, 2015) ("FMLA retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework") (citing *Rinaldi v. Quality King Distribs., Inc.*, 29 F. Supp. 3d 218, 231 (E.D.N.Y. 2104)).
[8] *Cook v. Deloitte & Touche, LLP*, No. 03 Civ. 3926 (LAK)(FM), 2005 U.S. Dist. LEXIS 22252, 2005 WL 2429422 (S.D.N.Y. Sept. 30, 2005) ("In connection with discriminatory discharge claims under the ADA, the Second Circuit applies the familiar burden-shifting analysis established by the Supreme Court in *McDonnell Douglas*").
[9] *Robles v. Cox & Co.*, 987 F. Supp. 2d 199, 205 (E.D.N.Y. 2013) ("[A] claim brought pursuant to the . . . NYSHRL is analyzed under the burden-shifting framework set forth by the Supreme Court in McDonnell Douglas"); *Baron v. Advanced Asset & Prop. Mgmt. Solutions*, 15 F. Supp. 3d 274 (E.D.N.Y. 2014) ("[S]ummary judgment motions under the NYSHRL are analyzed under the [] McDonnell Douglas burden-shifting framework[.]").
[10] *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 361-62 (S.D.N.Y. 2012). However, they are, reviewed "independently from and 'more liberally' than" federal law claims. *Loeffler v. Staten Island University Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (explaining that NYCHRL claims require independent analysis even if state and federal laws contain comparable language).

discriminatory reason. *See  Patterson v. City of Oneida,* 375 F.3d 206, 221 (2d Cir. 2004);

*Gorzynski*, 596 F.3d at 106-07 (quoting *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 180, 129 S.

Ct. 2343, 174 L. Ed. 2d 119 (2009)).   Although intermediate evidentiary burdens shift back and

forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d

105 (2000); see *Gorzynski*, 596 F.3d at 107.

## II.    Analysis

### A.  Timeliness Of Plaintiff's Claims

Under Title VII, a plaintiff must file an administrative charge with the EEOC within 300

days after a claim accrues.  *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998).

"This [300-day] requirement functions as a statute of limitations, in that discriminatory incidents

not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district

court." *Id*. at 763; *Crawford v. North Shore - Long Island Jewish Health Sys.*, No. CV 13-3894

(JFB)(ARL), 2016 U.S. Dist. LEXIS 22061 at * 42 (E.D.N.Y. Feb. 16, 2016).  Here, Plaintiff

filed his charge of discrimination with EEOC on August 21, 2013.  Thus, any claim arising out

of alleged discriminatory conduct occurring prior to October 25, 2012 is untimely.

While the continuing violations doctrine may extend the limitations period for claims of

discriminatory acts committed under an ongoing policy of discrimination, it is limited in

application and does not preserve untimely claims related to "discrete, completed employment

actions such as transfers, . . . ." *Sundram v. Brookhaven National Laboratories,* 424 F. Supp.2d

545, 560 (E.D.N.Y. 2006) (citing *Griffin v. New York City Off-Track Betting Corp.*, 2002 U.S.

Dist. LEXIS 2793, 2002 WL 252758, at *2 (S.D.N.Y. Feb. 20, 2002) (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1992) (citations omitted)).  The Supreme Court has explained that, notwithstanding the continuing violations doctrine, because a discrete discriminatory act occurs on the day that it happened, a party must file her charge within 300 days of the act or lose the ability to recover for it.  *AMTRAK v. Morgan*, 536 U.S. 101, 113-14, 122 S. Ct. 2061, 2072-73, 153 L. Ed. 2d 106 (2002) (reversing application of the continuing violations doctrine to what the Ninth Circuit Court of Appeals termed 'serial violations' because "discrete discriminatory acts are not actionable if time-barred even when they are related to act alleged in timely filed charges.").

Defendant argues that most of the alleged acts of discrimination occurred prior to October 25, 2012 and therefore any claim based upon these acts must be dismissed.  Def. Mem. at 3-8.  With respect to Plaintiff's claims other than Plaintiff's FMLA Claim (Count V) the Court shall evaluate the timeliness of each of Plaintiff's claimed acts of discrimination when discussing the validity of Plaintiff's claim.

### 1.  Plaintiff's FMLA Claim

Plaintiff asserted a claim for discrimination and retaliation under the FMLA Act for the first time in the Third Amended Complaint, which was filed on October 15, 2015.  Defendant asserts that the FMLA claims should be dismissed because they are untimely.  *See* Def. Mem. at 5.  Plaintiff does not respond to this position.  Rule 15(c) permits relation back of an amendment to the original complaint, where "the amendment asserts a claim . . . that arose out of the same conduct, transaction, or occurrence set out . . . in the original pleading."  Where the amendment involves a new cause of action, however, the district court may deny leave unless "the original

complaint gave the defendant fair notice of the newly alleged claims." *Wilson v. Fairchild Republic Co.,* 143 F.3d 733, 738 (2d Cir. 1998). [11]

The FMLA was not mentioned in Plaintiff's prior filings.  Plaintiff did not allege that he had taken a FMLA leave or that he was discriminated against or retaliated against for doing so. [12] Indeed, the crux of Plaintiff's claims as set forth in prior pleadings was that he was discriminated against on the basis of race.  Plaintiff's prior filings simply make no reference to the FMLA. Even reading the complaints liberally, as required given Plaintiff's *pro se* status, the Court cannot conclude that Defendant would have been on notice of the newly-asserted FMLA claim. In the Third Amended Complaint, Plaintiff for the first time alleges that because he took FMLA leave in October and November 2011 he was terminated a year later in October 2012.  3rd Am. Compl. ¶ 92.  This claim does not relate back to the filing of the original complaint on December 23, 2013.

"FMLA claims are generally subject to a two-year statute of limitations, but that limitations period extends to three years when the violation is 'willful.'" *Offor v. Mercy Med. Ctr.*, 676 Fed. Appx. 51 (2d Cir. 2017) (quoting *Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530, 531 (2d Cir. 2004) (per curiam)).  Absent an allegation of willfulness, Plaintiff's claim fails. Plaintiff's claim was first filed on October 15, 2015 but he was terminated on October 26, 2012. He did not file his claim until almost three years after his termination. [13]

---

[11] Defendant also argues that Plaintiff asserted a claim under the ADA in the Third Amended Complaint, which was more than 90 days after Plaintiff received the right to sue letter from the EEOC.  This claim, however, does relate back to the original complaint because Plaintiff did allege disability discrimination in that complaint and given his *pro se* status the pleading shall be liberally construed to include claims under the ADA.

[12] It is important to note that Plaintiff's FMLA leave was not taken for an injury to himself, but rather to assist his wife after surgery.  *See* Pl. Aff. Ex. 13.  Thus, this claim would not be implicated by any prior claim of disability discrimination previously asserted by Plaintiff.

[13] The date of Plaintiff's termination is the last event to constitute a violation of the FMLA.  *See Kamtaprassad v. Chase Manhattan Corp.,* No. 00 CIV. 8834 (DLC), 2001 U.S. Dist. LEXIS 21532 at *13 (S.D.N.Y. Jan. 3, 2002);

Plaintiff's FMLA claim is only timely if Plaintiff has alleged that Defendant's conduct was willful.  To establish willfulness Plaintiff must allege that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. . . ." *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133, 100 L. Ed. 2d 115, 108 S. Ct. 1677 (1987).  "Willful conduct is 'not merely negligent.'"  *Mejia v. Roma Cleaning, Inc.*, 2018 U.S. App. LEXIS 28235 at * 5, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018).  The Third Amended Complaint does not contain a general averment as to the willfulness of Defendant's conduct.  Some courts have held that this failure, standing alone is sufficient to defeat plaintiff's claim.  *See, e.g.,Ungerleider v. Fleet Mortg. Group of Fleet Bank*, 329 F. Supp. 2d 343, 363 (D. Conn. 2004) (dismissing FMLA claim as time barred where complaint lacked averment of willfulness).

At the summary judgment stage, however, Plaintiff most go even further.  Plaintiff is required to present admissible evidence supporting a claim of willful retaliation for Plaintiff's FMLA leave.  *See Mejia v. Roma Cleaning, Inc*., No. Case No.: 15-cv-4353 (SJF)(GRB), 2017 U.S. Dist. LEXIS 156409, 2017 WL 4233035 (E.D.N.Y. Sept. 25, 2017) ("However, while such allegations may be enough to avoid an early motion for dismissal, once discovery is completed, a plaintiff must have some evidence from which either a court or a reasonable fact-finder can find a willful FMLA violation").  "The 'FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave.'"  *Mejia v. Roma Cleaning, Inc*., 2018 U.S. App. LEXIS 28235 at * 5, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) (2d Cir. Oct. 5, 2018) (quoting *Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 175 (2d Cir. 2006).  Plaintiff here has presented no such evidence.

---

*Lambert v. New York State Office of Mental Health*, 97-CV-1347 (JG), 2000 U.S. Dist. LEXIS 10536 at *5 (E.D.N.Y. June 9, 2000).

In response to Defendant's motion for summary judgment, Plaintiff contends that Plaintiff had notified gang foreman Wittneben and was approved under the FMLA for intermittent leave to take care of his wife who was recovering from surgery.  Pl. Rule 56.1 Statement ¶ 104.  Due to his wife's medical care, Plaintiff asserts he was late to work on a few occasions.  *Id.*  Despite informing  Wittneben that was on FMLA leave, Wittneben still penalized Plaintiff for lateness.  *Id.*  However, the record does not support Plaintiff's claim that his termination in October 2012 was done in willful retaliation for Plaintiff's FMLA leave in October and November 2011.  Rather, the record clearly reveals that Plaintiff's repeated lateness and multiple absences without prior notice most of which occurred outside the FMLA leave period were the basis of his termination.  Plaintiff was provided an internal trial for violating the LIRR's absence control policy during the period April 1, 2011 through November 30, 2011.  Def. Rule 56.1 Statement at ¶ 42.  As part of this violation, Plaintiff was cited for arriving late only twice during the FMLA leave period.  *See* Pl. Dep. Ex. G.  However, during the period covered by this violation he had also accrued seven other lateness or absences outside of the FMLA leave period,  all of which contributed to the finding that he violated the absence control policy.  In addition, this was only one of the five absence control policy violations issued to Plaintiff ultimately resulting in his termination.  This record thus fails to support Plaintiff's claim that Defendant willfully retaliated against Plaintiff for taking FMLA leave.

Accordingly, the undersigned respectfully recommends that Plaintiff's FMLA claim be found subject to the two-year limitation period set forth in the Act, and be dismissed, with prejudice, as untimely.

B. **Unsigned and Unsealed Summon**

Defendant moves to dismiss Plaintiff's action because the summons accompanying the original complaint in this action was defective.  According to Defendant, the summons served with the original complaint was unsigned and lacking the seal of the Clerk of the Court.  Plaintiff does not respond in any way to this argument.

Rule 4 provides that "[t]he summons shall be signed by the clerk, bear the seal of the court, identify the court and the parties, be directed to the defendant, and state the name and address of the plaintiff's attorney or, if unrepresented, of the plaintiff." Fed. R. Civ. P. 4(a); *see also id.* 4(a)(1)(F) & (G) (requiring that a summons be signed by the clerk and bear the court's seal).  "A summons must be served with a copy of the complaint." *Id.*  Where the summons is lacking the necessary signature and seal the summons is defective.  *See Yoonessi v. New York State Bd. for Prof'l Med. Conduct*, No. 03-CV-871S, 2005 U.S. Dist. LEXIS 40035 , 2005 WL 645223, at *15 (W.D.N.Y. Mar. 21, 2005) (finding that the "summons, which was not signed by the clerk, did not bear the seal of the court, was not dated and did not identify the court in which the action is filed . . . is defective").  "The remedy for service of a defective summons is to quash service of process -- not to dismiss the action." *Bakhshi v. McCleod-Wilson*, No. 03-CV-5592 (FB), 2006 U.S. Dist. LEXIS 58305, 2006 WL 2403332 (E.D.N.Y. Aug. 18, 2006) (citing *Macaluso v. N.Y. Dep't of Envtl. Conservation*, 115 F.R.D. 16, 19-20 (E.D.N.Y. 1986) (quashing service but denying motion to dismiss because "there [wa]s a reasonable prospect that plaintiff[s] ultimately w[ould] be able to serve defendants properly" (internal citation and quotations omitted)); *Osrecovery, Inc. v. One Group Intern., Inc.,* 234 F.R.D. 59, 61-62 (S.D.N.Y. 2005) (analyzing whether court should extend time to serve proper summons)).

However, the Court has discretion pursuant to Rule 4(m) with regard to granting an extension of time to correct the summons.  Rule 4(m) provides that:

> If a defendant is not served within [ninety] days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

*Id.* 4(m).  "It is clear under the second clause of Rule 4(m) that an extension is always warranted upon a showing of 'good cause,'" and "[t]he first clause of Rule 4(m), which makes no mention of good cause, grants discretion to district courts in a backhanded fashion by dictating that they . . . must decide to dismiss . . . or decide not to dismiss.  But no criteria for this decision are supplied in the rule itself." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007); *Husowitz v. American Postal Workers Union,* 190 F.R.D. 53, 57 (E.D.N.Y. 1999) ("Rule 4(m) allows the court, in its discretion, to extend the time for service, even if the plaintiff fails to show good cause. If the plaintiff has shown good cause, the extension is mandatory").  Where "good cause" does not exist, the district court, in exercising its discretion to extend the time for service, should consider "(1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by extending the plaintiff's time for service." *Swanson v. City of New York*, No. 16-CV-3231 (MKB), 2017 U.S. Dist. LEXIS 114071 at * 10 (E.D.N.Y. July 21, 2017); *Egbuna v. 1. Syracuse City Sch. Dist.*, No. 5:05-CV-112 (NAM/GHL), 2006 U.S. Dist. LEXIS 69507 at *9, 2006 WL 2792744 (N.D.N.Y. Sept. 27, 2006).

"Courts in the Second Circuit are split as to whether an unsigned and unsealed summons is a technical defect or a flagrant disregard of Rule 4." *DeLuca,* 695 F. Supp. 2d at 65 (collecting cases); *compare Krieger v. Am. Express Fin. Advisors*, No. 98-CV-782E(F), 2000 U.S. Dist. LEXIS 1663, 2000 WL 207119, at *4 (W.D.N.Y. Feb. 16, 2000) (denying the defendant's

20

motion to dismiss for insufficient service where the absence of the clerk's signature and the court's seal were "mere technical defects") *with Macaluso*, 115 F.R.D. at 18 ("This [c]ourt . . . does not view service of an unsigned, unsealed summons not issued by the court clerk as a mere technical defect. Instead, it amounts to a complete disregard of requirements of process set forth clearly and concisely in Rule 4.").

Here, however, the statute of limitations governing Title VII actions would bar plaintiff from re-filing this action. A Title VII claimant must file his complaint not more than 90 days after receipt of a right-to-sue letter from the EEOC. *See Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir.1994) (citing 42 U.S.C. § 2000e-5(f)(1)). In this case, the EEOC issued a right-to-sue letter on September 23, 2013. More than five years have passed since the EEOC's issuance of that letter, thus the statute of limitations would bar Plaintiff from refiling this action. Moreover, it is undisputed that Defendant has actual notice of the claims asserted in the complaint and, indeed, despite a long procedural history, this is the first time Defendant has raised the defective summons. Further, Defendant has identified no prejudice from the errors in the summons.

"When the error in the summons goes to form rather than substance, amendment . . . should be freely granted . . . as courts should not deny a plaintiff her day in court due to technical imperfections in service." *Durant v. Traditional Invs., Ltd.,* No. 88-CV-9048, 1990 U.S. Dist. LEXIS 3074, 1990 WL 336611, at *4 (S.D.N.Y. Mar. 22, 1990); *see also Marquez v. Starrett City Assocs.,* 13-CV-2362 (LDH) (LB), 2017 U.S. Dist. LEXIS 161800 at *7 (E.D.N.Y. Sept. 30, 2017) ("technical errors that are neither misleading nor prejudicial can be cured through an amendment, the right to which should be liberally granted"), *but see Osrecovery, Inc.* 234 F.R.D. at 61 (dismissing action where plaintiff offered no excuse for failure to have summons signed because such failure "constituted a flagrant disregard of Rule 4"). In *Osrecovery,* the plaintiff

21

was represented by counsel, who should have known better, unlike Plaintiff here who was proceeding *pro se* at the time of the filing of the original complaint.

Accordingly, the undersigned respectfully recommends that Judge Seybert deny Defendant's request that this action be dismissed in light of the defective summons and recommends that, Plaintiff be granted an extension of time of 30 days to serve a properly signed and sealed summons on the Defendant, in compliance with Rule 4 of the Federal Rules of Civil Procedure, and to file an affidavit of service and a copy of the summons as it was served the Defendant.  The undersigned further recommends that if Plaintiff fails to serve the summons or file proof of service with the Court within thirty days, the Court will dismiss the action without prejudice for failure to comply with Rule 4(m).

## C.  Race and Disability Discrimination Claims

Plaintiff's Third Amended Complaint asserts claims for discrimination under Title VII (Counts I-IV), the FMLA (Count V), Rehabilitation Act (Count VI), ADA (Count VII), NYSHRL (Count VIII), and NYCHRL (Count IX-XII).

### 1.  NYCHRL Claims

Plaintiff asserts claims pursuant to NYCHRL § 8-101 (Count IX-Race Discrimination), § 8-107(7) (Count X-Retaliation), § 8-107(1)(b) (Count XI-Race-Based Discrimination), and § 8-107(17)(A)(2) (Count XII-Disparate Impact).    The NYCHRL prohibits employers from discriminating and retaliating against its employees, *inter alia*, on the basis of race and national origin.  *See* N.Y.C. ADMIN. CODE § 8-107.  "It is clear from the statute's language that its protections are afforded only to those who inhabit or are 'persons in' the City of New York." *Hoffman v. Parade Publ'ns*, No. 132, 2010 N.Y. LEXIS 1346, at *3 (N.Y. July 1, 2010).

When a non-resident seeks to invoke the coverage of the NYCHRL, he or she must show that the alleged discrimination or retaliation had an "impact" within New York City.  *See Hoffman*, 2010 N.Y. LEXIS 1346, at *6 - 7 (N.Y. July 1, 2010) (holding that the protections of the NYCHRL to non-residents are limited to those who work in the City); *see also Spilkevitz v. Chase Inv. Servs. Corp*., No. CV-08-3407 (SJF) (ETB), 2009 U.S. Dist. LEXIS 77661, at *13 (E.D.N.Y. Aug. 27, 2009) (holding that "[w]hen a non-resident seeks to invoke the coverage of the [NYCHRL] . . . he or she must show that the alleged discrimination [or retaliation] occurred within New York City . . .") (internal citations omitted).

Here the New York City Human Rights Law is inapplicable because Plaintiff neither resides nor works in New York City and the discriminatory and retaliatory conduct of which Plaintiff complains had no impact within New York City.  *See Morris v. Broadridge Fin. Servs*., No. 10-CV-1707 (JS)(AKT), 2010 U.S. Dist. LEXIS 132708, 2010 WL 5187669 (E.D.N.Y. Dec. 14, 2010).  Plaintiff resides in Roosevelt , New York and the alleged discrimination all occurred while Plaintiff was working at the Hempstead Yard, in Hempstead New York.  Accordingly, the Court respectfully recommends that Plaintiff's claims pursuant to the NYCHRL be dismissed.

## 2. Race Discrimination

Plaintiff asserts race discrimination claims pursuant to Title VII, NYSHRL and NYCHRL.  Defendant has moved for summary judgment with respect to each of these claims.

Title VII prohibits employers from discriminating against an individual on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "'To establish a prima facie case of employment discrimination under Title VII, a plaintiff must show that '(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an

adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination.'"[14] *Mercedes v. Ava Pork Prods.*, No. 13-CV-3212 (JFB) (AKT), 2014 U.S. Dist. LEXIS 48416, 2014 WL 1369611at *3 (E.D.N.Y. Apr. 8, 2014) (citing *Chang v. N.Y.C. Dep't for the Aging*, No. 11 Civ. 7062(PAC) (JLC), 2012 U.S. Dist. LEXIS 50436, 2012 WL 1188427, at *4 (S.D.N.Y. Apr. 10, 2012) (quoting *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010)), report & recommendation adopted, 2012 U.S. Dist. LEXIS 82972, 2012 WL 2156800 (S.D.N.Y. June 14, 2012)).  It is undisputed that Plaintiff is African-American, was qualified for his prior job and suffered an adverse employment action -- his termination in October 2012.[15]  *See McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir. 1997) (describing first three elements of prima facie case). The focus, therefore, is whether the termination "occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in [a protected] class." *Id.*  Plaintiff must be able to make a showing that his termination occurred under circumstances giving rise to an inference of discrimination. Since direct evidence of discrimination is rare,

> courts examine a variety of factors to evaluate whether there exists "a permissible inference of discriminatory intent": (1) an employer's practice of interviewing replacements for plaintiff with qualifications substantially similar to plaintiff; (2) an employer's criticism of plaintiff "in ethnically degrading terms"; (3) an employer's "invidious comments" about other individual's in plaintiff's protected group; (4) an employer's favoritism towards other employees not in the protected group; and (5) the events leading up to and timing of plaintiff's discharge.

---

[14] New York state employment discrimination laws are analyzed used the same framework as Title VII claims. *Lumhoo v. Home Depot United States*, 229 F. Supp. 2d 121, 136 (E.D.N.Y. 2002).  Plaintiff's claim under the NYCHRL is subject to a more lenient standard and, to the extent not dismissed for a lack of subject matter jurisdiction as recommended above, must be analyzed separately.  *See Moza v. N.Y. City Health & Hosps. Corp.*, No. 15-CV-0051, 2017 U.S. Dist. LEXIS 51427, 2017 WL 1251096 (E.D.N.Y. Apr. 4, 2017).

[15] Defendant correctly argues that each of the "specific" instances of discrimination alleged by Plaintiff do not qualify as adverse employment action, nevertheless, Plaintiff has identified at least one adverse employment action, his termination.

*Tubo v. Orange Reg'l Med. Ctr.*, No. 13-1495, 2015 U.S. Dist. LEXIS 139254, 2015 WL
5945853, at *7 (S.D.N.Y. Oct. 13, 2015) (quoting *Chambers v. TRM Copy Centers Corp.,* 43
F.3d 29, 37 (2d Cir. 1994)); *see Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015);
*Roa v. Mineta*, 51 Fed. App'x 896, 899 (2d Cir. 2002) ("An inference of discrimination may be
drawn from a showing that a similarly situated individual that is not in the plaintiff's protected
class was more favorably treated.").  Plaintiff must do "more than cite to his alleged mistreatment
and ask the court to conclude that it must have been related to his race." *Grillo v. New York City
Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002) (internal quotation omitted).

Plaintiff has not provided evidence that he was criticized in ethnically degrading terms,
that Defendant made invidious comments about other individuals in Plaintiff's protected group
or that Defendant interviewed replacements for Plaintiff with qualifications substantially similar
to Plaintiff.  Thus, this Court will only consider whether the events leading up to Plaintiff's
termination and the timing of his discharge support a claim of discrimination as well as
Plaintiff's claim that white employees were treated more favorably than African-American
employees.

As discussed above, Plaintiff was terminated for excessive absence.  Plaintiff claims he
was absent from work because he was too anxious about the harassment to go to work and he
was suffering from anxiety and depression.  There is no evidence in the record, however, from
which a reasonable jury could conclude that the "harassment" Plaintiff complains of amounted to
actionable discriminatory treatment.  Plaintiff complained of being forced to use a defective
mop, park in the employees parking lot and not being assigned the appropriate level of work
based upon his seniority, however, in each instance other employees in the same protected class
were subjected to the same treatment.  While this treatment may have amounted to harassment,

25

there must be some evidence that Plaintiff was harassed "because of" his race.  *See Edwards v. New York State Unified Court Sys.,* No. 12 CIV. 46 WHP, 2012 U.S. Dist. LEXIS 172207, 2012 WL 6101984, at *5 (S.D.N.Y. Nov. 20, 2012) (plaintiff must do more than allege the familiar faulty syllogism: something bad happened to me at work; I am (fill in the blank with one or more protected categories); therefore it must have happened because I am (fill in the blank with the applicable protected categories.").  No cause of action lies for "mere unpleasantness in the work place."  *Hubbell v. World Kitchen, LLC,* 688 F. Supp. 2d 401, 420 (W.D. Pa. 2010) (quoting *Hartsell v. Duplex Prods., Inc.,* 123 F.3d 766, 773 (4th Cir. 1997)); *see also Anderson v. England*, 359 F. Supp. 2d 213, 218 (D. Conn. 2005) ("equal opportunity harassment is not actionable under Title VII").  Other than his own perceptions, Plaintiff has failed to produce any evidence that could lead a reasonable fact finder to conclude that his failure to receive the job assignment he felt entitled to was the result of racial discrimination.  *See Olorode v. Steamingedge, Inc*., No. 11 CV 6934, 2014 U.S. Dist. LEXIS 59421, 2014 WL 1689039, at *13 (S.D.N.Y. Apr. 29, 2014) ("[A] plaintiffs 'mere subjective belief that [s]he was discriminated against . . . does not sustain a . . . discrimination claim.") (quoting *Gue v. Suleiman*, No. 10 CV 8958, 2012 U.S. Dist. LEXIS 141295, 2012 WL 4473283, at *8 (S.D.N.Y. Sept. 27, 2012)).

### a.  Disparate Treatment

Plaintiff also attempts to establish an inference of discrimination through evidence of disparate treatment.  Plaintiff alleges that he was discriminated against and subjected to disparate treatment during the course of his employment due to his race.  3rd Am. Compl. ¶ 68.  According to Plaintiff, he was verbally attacked and falsely accused of misconduct on the basis of discriminatory animus toward Plaintiff. *Id*. at ¶ 69.  Finally, plaintiff alleges that he was terminated for pre-textual reasons fueled by discriminatory animus. *Id*. at 73.

Defendant argues that this Court should grant summary judgment because most of Plaintiff's allegations fail to qualify as adverse employment actions and none of the adverse actions occurred under circumstances giving rise to an inference of discriminatory intent.  Def. Mem. at 12.  Defendant further argues that even if Plaintiff could establish a prima facia case of discrimination, the LIRR has a legitimate, non-discriminatory and non-pretextual reason for discipling and terminating Plaintiff.  *Id*.

Most of Plaintiff's claims relating to a perceived disparate treatment occurred more than 300 days prior to Plaintiff's filing of a complaint with the EEOC.  Plaintiff complains of being forced to re-clean a train in September 2010 (3rd Am. Compl. ¶ 26), unequal distribution of work in September 2011 (3rd Am. Compl. at 32), and disagreements regarding parking in the commuter parking lot in December 2011(3rd Am. Compl. ¶ 37).  As discussed above, "[a]n aggrieved employee wishing to bring a Title VII claim in district court must file an administrative complaint with the EEOC within 300 days of the alleged discriminatory act." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 219 (2d Cir. 2004).  Plaintiff's EEOC complaint was filed on August 21, 2013 and therefore any alleged misconduct occurring prior to October 25, 2012 is not actionable as time-barred.

Moreover, Plaintiff has not adduced evidence from which a reasonable jury could conclude that other, non-black employees with a similar attendance record would not have been terminated.  Plaintiff has offered only conclusory assertions that similarly situated white employees were treated more favorably than he was or that his treatment was based upon an improper motive and these allegation do not directly  relate to his termination, which is the only adverse action he alleges.  Pl. Mem. at 6.  Plaintiff identifies one instance where he, an African American male, was treated differently than his white counterpart.  He alleges he was required to

clean more trains than a white male.  3rd Am. Compl. at ¶ __; Pl. Mem at 4.  Not only did this

event occur more than 300 days prior to the filing of Plaintiff's charge of discrimination with the

EEOC but it is also belied by Plaintiff's own testimony indicating that other African American

employees were required to clean the lesser number of trains.  Def. Rule 56.1 Statement at ¶ 38.

With respect to Plaintiff's remaining allegations of harassment, i.e., the parking lot,

defective mop and train recleaning, Plaintiff has acknowledged that this treatment was received

by employees of all races .  In response to Defendant's motion for summary judgment, Plaintiff

argues that when he returned to work in September 2010 he noticed that gang foreman Angiuli

was "acting in a discriminatory and retaliatory hostile manner by being confrontational with him

while he was trying to perform his normal duties."  Pl. Mem. at 3.  Even if this allegation were

timely, it is insufficient to support a claim for racial discrimination in violation of Title VII.  *See*

*Cameron v. Cmty. Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003) ("Purely

conclusory allegations of discrimination, absent any concrete particulars, are insufficient" to

defeat a motion for summary judgment.) (internal quotations omitted); *Bickerstaff v. Vassar*

*Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) ("Plaintiffs "feelings and perceptions of being

discriminated against are not evidence of discrimination.") (internal quotations omitted); *Hill v.*

*Rayboy-Brauestein*, 467 F. Supp. 2d 336, 360 (S.D.N.Y. 2006) ("When a person only makes

general allegations that African-Americans are treated differently in the workplace, those

allegations are insufficient to support a hostile work environment claim.").  There is absolutely

no evidence in the record indicating that any of Plaintiff's supervisors or fellow employees ever

made any racially discriminatory remarks to, or about, Plaintiff

Even assuming that Plaintiff has established an inference of discrimination sufficient to

state a prima facie case – which he has not --, Defendant has offered a legitimate,

nondiscriminatory reason for Plaintiff's termination: he violated the LIRR absence control policy of at least five separate occasions. Indeed, Plaintiff's termination was confirmed by neutral arbitrator and was based upon a series of attendance control policy violations. Under *Collins v. New York City Transit Authority*, 305 F.3d 113 (2d Cir. 2002), when a termination occurs "only after a decision, based on substantial evidence, of an undisputedly independent, neutral, and unbiased adjudicator that had the power to prevent the termination," then "[t]his fact is highly probative of the absence of discriminatory intent in the termination." *Id*. at 119. As the Circuit held:

> Where . . . that decision follows an evidentiary hearing and is based on substantial evidence, the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact — e.g., new evidence not before the tribunal — or that the impartiality of the proceeding was somehow compromised.

*Id*.; *see also Gonzalez v. UPS*, No. 15 Civ. 8421 (AKH), 2017 U.S. Dist. LEXIS 219978, 2017 WL 8780567 (S.D.N.Y. Nov. 8, 2017) ("Plaintiff had an adequate opportunity to dispute his termination during a collectively bargained arbitration process, which concluded after an evidentiary proceeding that he was fired for violation" of company policy). Here, the neutral arbitrator appointed pursuant to a grievance process in a collective bargaining agreement heard evidence, determined credibility, and rendered a reasoned decision. Thus, pursuant to *McDonnell Douglas*, the burden shifts back to Plaintiff to show that Defendant's reason for his termination is pretextual. Plaintiff has failed to offer a shred of evidence to support this conclusion.

Accordingly, the undersigned respectfully recommends that Defendant's motion for summary judgment with respect to Plaintiff's claims for race discrimination pursuant to Title VII and NYSHRL be granted.

With respect to Plaintiff's claims pursuant to the NYCHRL Plaintiff alleges discrimination on the basis of his race, under N.Y.C. Admin. Code ("NYCHRL") § 8-107 (Counts IX and XI).  NYCHRL claims must be considered separately from federal and state law discrimination claims. *Vargas v. Morgan Stanley*, 438 F. App'x 7, 10 (2d Cir 2011).  The NYCHRL is broader than the equivalent federal statutes. *See Margherita v. FedEx Exp.,* No. 07 Civ. 4826, 2011 U.S. Dist. LEXIS 121249, 2011 WL 5024577, at *8 (E.D.N.Y. Oct, 20, 2011) (vacated on other grounds).  "Nonetheless, 'a plaintiff must still link the adverse employment action to a discriminatory motivation,' and where he fails to do so, plaintiff's claims fail." *Moza*, 2017 U.S. Dist. LEXIS 51427 (quoting *Sotomayor v. City of New York*, 862 F. Supp. 2d 266, 258 (E.D.N.Y. 2012).  As noted with respect to Plaintiff's claims under Title VII and the NYSHRL, Plaintiff has not established a link between his termination and a discriminatory motive. Accordingly, to the extent this claim is not dismissed for a lack of subject matter jurisdiction, summary judgment should be granted with respect to this claim as well.

### b.  Disparate Impact

Plaintiff also asserts a claim for disparate impact under Title VII and NYCHRL, alleging that LIRR employment policies adversely impact African American employees in that those employees are required to meet differing standards.  *See* 3rd Am. Compl. ¶¶ 76, 133.  Defendant asks the Court to dismiss Plaintiff's claim for disparate impact race discrimination under Title VII because Plaintiff failed to establish the elements of his claim.  Def. Mem. at 20.  Plaintiff has not responded to this argument.

In order to establish a prima facie case of disparate impact based on race, Plaintiff must show "that a facially neutral employment policy or practice has a significant disparate impact" on the protected class. *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 111 (2d Cir. 2001)

30

(internal quotation marks and citation omitted). "This requires a plaintiff to (1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Chin v. Port Auth. of NY. & N.J.,* 685 F.3d 135, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). The elements of a prima facia case of disparate impact under NYCHRL are identical. *See Richardson v. City of New York*, No. 17-CV-9447 (JPO), 2018 U.S. Dist. LEXIS 168208 at * 31, 2018 WL 4682224 (S.D.N.Y. Sept. 28, 2018) ("Plaintiffs must plausibly (1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two").

"Disparate impact is proven through statistical evidence." *Ingenito v. Riri USA, Inc.,* No. 11-CV-2569 (MKB), 2013 U.S. Dist. LEXIS 27333, 2013 WL 752201, at *12 (E.D.N.Y. Feb. 27, 2013) (citations omitted); *see also Teasdale v. City of New York*, No. 08-CV-1684 (KAM), 2013 U.S. Dist. LEXIS 133764, 2013 WL 5300699, at *8 (E.D.N.Y. Sept. 18, 2013) ("statistical proof almost always occupies center stage in a prima facie showing of a disparate impact claim") (internal quotation marks and citation omitted). "The statistics must reveal that the disparity is substantial or significant, and must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity." *Chin*, 685 F.3d at 151 (internal quotation marks and citation omitted); *see Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994, 108 S. Ct. 2777, 101 L. Ed. 2d 827 (1988) (same). Thus, the statistics "must reflect a disparity so great that it cannot be accounted for by chance." *EEOC v. Joint Apprenticeship Comm. of the Joint Indus. Bd. of Elec. Indus.,* 186 F.3d 110, 117 (2d Cir. 1998)

Aside from proffering general allegations of discrimination and complaints of discriminatory acts, Plaintiff has failed to identify any specific facially neutral employment practices or policies of Defendant that had a disparate impact on African-American employees.

Nor has Plaintiff provided the statistical analysis typically required in disparate impact cases. Plaintiff alleges only that he was required on occasion to clean more trains than white employees, however, acknowledges that other African-American employees also cleaned fewer cars than he did.  This is simply not enough.

This allegation of discrimination does not constitute a specific employment policy that is facially neutral but nevertheless had a disparate effect.  Rather, Plaintiff's citations constitute a list of generalized complaints of discriminatory conduct.  *See Ingenito*, 2013 U.S. Dist. LEXIS 27333, 2013 WL 752201, at *12 ("Disparate impact claims 'are concerned with whether employment policies or practices that are neutral on their face and were not intended to discriminate have nevertheless had a disparate effect on [a] protected group'") (quoting *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012)).  Accordingly, it is respectfully recommended that Defendant's motion for summary judgment with respect to Plaintiff's claims of disparate impact (Counts III and XII) be granted.

### 3.  Hostile Work Environment

Plaintiff also brings a hostile work environment claim under Title VII against Defendant. *See* 3rd Am. Compl. Count I.  Defendant moves for summary judgment with respect to these claims on the grounds that Plaintiff has not "produced evidence that his work place was permeated with discriminatory intimidation, ridicule or insult."  Def. Mem. at 11.

"To establish a prima facie case of hostile work environment, the plaintiffs must show that the discriminatory harassment was 'sufficiently severe or pervasive to alter the conditions of [their] employment and create an abusive working environment,' and 'that a specific basis exists for imputing' the objectionable conduct to the employer." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d

Cir. June 24, 2015) (quoting *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir. 1997)).  "To

overcome summary judgment, the plaintiff must proffer evidence that his 'workplace was so

severely permeated with discriminatory intimidation, ridicule, and insult, that the terms and

conditions of his employment were thereby altered.'"  *Mihai Ilinca v. Bd. of Coop. Educ. Servs.

of Nassau,* No. 13-CV-3500(JS)(AYS), 2016 U.S. Dist. LEXIS 164466 at * 16, 2016 WL

6989780 (E.D.N.Y. Nov. 29, 2016) (quoting *Dall v. St. Catherine of Siena Med. Ctr.,* 966 F.

Supp. 2d 167, 188-89 (E.D.N.Y. Aug. 14, 2013)).  "In determining whether a work environment

is hostile, the Court examines the totality of the circumstances, which include 'the frequency of

the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance.'"  *Id.* (quoting *Littlejohn,* 795 F.3d at 321).  "However, 'limited, infrequent, and at

worst, mildly offensive conduct,' does not suffice to raise triable issues of fact regarding an

objectively hostile work environment."  *Id.* (quoting *Cristofaro v. Lake Shore Cent. Sch. Dist.,*

473 F. App'x 28, 30 (2d Cir. 2012)).  The Second Circuit has instructed that "the appalling

conduct alleged in prior cases should not mark the boundary of what is actionable. *Richardson,*

180 F.3d at 439.  Moreover, the creation of a hostile work environment alone, is not enough to

satisfy the first element of a hostile work environment claim.  Plaintiff must also show that

Defendant subjected Plaintiff to a hostile work environment because of his race.  *Pearson v. Bd.

of Educ,* 499 F. Supp. 2d 575, 592 (S.D.N.Y. Aug. 13, 2007) ("Abusive conduct in the

workplace, if not based on a protected class, is not actionable under Title VII. This statute

prohibits discrimination, and is not a civility code") (citing *Oncale v. Sundowner Offshore Servs.,

Inc.,* 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)).

As a threshold matter, the Court addresses the issue of timeliness of this claim to the extent that Plaintiff relies on conduct occurring before October 25, 2012 (300 days before his August 21, 2013 complaint to the EEOC).  "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct."  *Morgan*, 536 U.S. at 117. Because a hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice, a hostile work environment claim will be timely so long as "one act contributing to claim occurred within the statutory period; if it did, 'the entire time period of the hostile environment may be considered by a court for purposes of determining liability.'" *Sundram*, 424 F. Supp.2d at 560 (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) (quoting *Morgan*, 536 U.S. at 117, 122 S. Ct. at 2074).  Thus, given that there are several alleged acts contributing to his hostile work environment claims that occurred within the statutory period, the Court may properly consider the entire time period of the alleged hostile environment.

Plaintiff has failed to raise a genuine issue of fact that he suffered an objectively hostile work environment on the basis of his race.  The small number of events that Plaintiff offers are neither severe nor pervasive and did not materially alter his day-to-day working conditions. "The standard for a hostile work environment claim is 'demanding,' and the plaintiff must prove that the conduct was 'offensive, pervasive, and continuous enough to amount to a constructive discharge.'" *De La Rosa v. City of N. Y. Police Dept.*, No. 09 Civ. 5290 (SAS), 2010 U.S. Dist. LEXIS 112770, 2010 WL 4177626, at *8 (S.D.N.Y. Oct. 22, 2010) (quoting *Scott v. Memorial Sloan-Kettering Cancer Ctr.*, 190 F. Supp. 2d 590, 599 (S.D.N.Y. 2002).  Relevant factors include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

34

with an employee's work performance." *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).  Plaintiff points to several isolated instances of alleged discriminatory treatment – not being assigned to clean bathrooms regularly and having his team system of cleaning trains changed by a supervisor both in September 2010 and being required to use a defective mop and park in the employee parking lot in November and December 2011. None of these events rise to the level of severity required to state a claim for hostile work environment.

Plaintiff has also failed to raise a fact issue supporting a claim that any mistreatment he suffered was motivated by Defendant's discriminatory animus.  *Hill*, 467 F. Supp. 2d at 359 ("Plaintiff must prove that the hostile conduct occurred because of her membership in a protected class.");  *Williams v. New York City Hous. Auth.,* 872 N.Y.S.2d 27, 39 (1st Dep.'t 2009) (to establish a prima facie case for employment discrimination under the NYCHRL, "the relevant consideration is whether there is a triable issue of fact as to whether the plaintiff 'has been treated less well than other employees because of her [protected characteristics].'");  *Campbell*, 2012 U.S. Dist. LEXIS 15843, (citing *Williams,* 872 N.Y.S.2d at 39).  Plaintiff does not offer the sort of evidence required to survive summary judgment — evidence that similarly-situated white employees were treated more favorably than he was, or that his treatment was based on his race. *See Hill*, 467 F. Supp. 2d at 360.

Plaintiff's "general allegations" are nearly identical to those at issue in *Sharpe v. MCI Communications Services, Inc*., 684. F. Supp. 2d 394 (S.D.N.Y. 2010).  In *Sharpe*, a plaintiff sued his employer under Title VII, alleging a hostile work environment based on race.  The court dismissed the claim, finding that the plaintiff failed to provide "concrete particulars" to prove a racially hostile work environment.  *Id*. at 400.  The court found insufficient the plaintiff's

allegations that: (1) the plaintiff's supervisor treated the plaintiff harshly, (1) the supervisor was "nasty" and "mean" when it came to people of color, and (3) the supervisor did not yell at his white employees. *Id*. at 400-01. Additionally, the court also found it relevant that the plaintiff admitted that his supervisor never made any racially derogatory comment, and none of the plaintiff's complaints mentioned race discrimination. *Id*. at 401. These allegations are nearly identical to those presented here. *See also Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 675 (S.D.N.Y. 2012) (summary judgment granted where Plaintiff fails to "assert that anyone ever made derogatory comments to her that ridiculed or insulted her because of her [race]; plaintiff could not point to a single instance where anyone said anything related to plaintiff's [race]").

Accordingly, the undersigned respectfully recommends that Defendant's motion for summary judgment with respect to Plaintiff's hostile work environment claim be granted.

### 4. Disability Discrimination

Plaintiff asserts claims for disability discrimination pursuant to the FMLA,[16] Section 504 of the Rehabilitation Act, and the ADA. Defendant argues that summary judgment should be granted with respect to each of these claims because the LIRR did not discriminate or retaliate against Plaintiff. Def. Mem. at 26-27.

The Rehabilitation Act, the ADA and NYSHRL prohibit discrimination of the basis of a disability. "To establish a prima facie case under the Rehabilitation Act, a plaintiff must allege: [1] that he or she is a person with disabilities under the Rehabilitation Act, [2] who has been denied benefits of or excluded from participating in a federally funded program or special

---

[16] Plaintiff's claims under the FMLA are untimely and will not be considered here.

service, [3] solely because of his or her disability." *Bryantv. New York State Educ. Dep't*, 692 F.3d 202, 216 (2d Cir. 2011). The ADA, Section 504 and the NYSHRL provide similar protections to individuals with disabilities and the merits of such claims are generally considered together. *McGugan*, 752 F.3d at 233 n.4 (noting that claims under both statutes are generally treated identically); *Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2d Cir. 2006) (same standards apply to disability discrimination claims brought under the NYSHRL and the ADA).  Here, there is no dispute that the LIRR is an employer subject to these statutes, however Plaintiff has failed to adduce facts from which a reasonable jury could conclude he suffered from a disability.

"Disability" is defined by these statutes as "a physical or mental impairment that substantially limits one or more major life activities of such individual."  *Kelly v. N.Y. State Office of Mental Health*, 200 F. Supp. 3d 378, 390-91 (E.D.N.Y. 2016) (quoting 42 U.S.C. § 12102(1); 29 U.S.C. §705(20)(B)).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102 (2)(A).

 Plaintiff can demonstrate that he has a disability within the meaning of these statutes in any one of three ways.  Plaintiff can show that he (1) has a physical or mental impairment that "substantially limits" one or more "major life activities"; (2) has a "record of such an impairment"; or (3) is "regarded as" having such an impairment. 42 U.S.C. § 12102(1). Disability determinations are made on a case by case basis.  *Reeves v. Johnson Controls World Servs*, 140 F.3d 144, 151-52 (2d Cir. 1998); *Cook*, 2005 U.S. Dist. LEXIS 22252 at * 28. Plaintiff here has not even attempted to satisfy any of these definitions.

To satisfy the first prong of this test, "(1) a plaintiff must show that he suffers from a physical or mental impairment; (2) the plaintiff must identify the activity that is claimed to be impaired and establish that such activity constitutes a major life activity; and (3) the plaintiff must show that his physical or mental impairment substantially limits the identified major life activity." *Baron v. Advanced Asset & Prop. Mgmt. Solutions, LLC,* 15 F. Supp. 3d 274, 281 (E.D.N.Y. 2014) (internal quotation omitted); *see also Cook*, 2005 U.S. Dist. LEXIS 22252 at *40 (granting summary judgment in defendant's favor where plaintiff "failed to adduce any admissible medical evidence from which a finder of fact reasonably could conclude that [plaintiff] suffered from a 'disability' within the meaning of the ADA"). The Third Amended Complaint is devoid of any reference to impairments that would limit Plaintiff's major life activities. Plaintiff alleges only that "Plaintiff suffers from a physical impairment that resulted in substantial limits on certain major life activities." 3rd Am. Compl. ¶ 107. However, that "physical impairment" is nowhere identified. Plaintiff's Third Amended Complaint details an injury in 2009, from which he returned to full time work, and an incident involving chest pain in February 2012, neither of which are documented as a "substantial limit on a major life activity."

To satisfy the second prong, Plaintiff must demonstrate "a record" of an impairment that substantially limits one or more major life activities. *See* 42 U.S.C. § 12102(2)(B) (1994). "The intent of this provision, in part, is to ensure that people are not discriminated against because of a history of disability." 29 C.F.R. pt. 1630 App., § 1630.2(k). According to the EEOC:

> This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities.

38

*Id*. "The record must be one that shows an impairment that satisfies the ADA." *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635,   (2d Cir. 1998).  Plaintiff has not provided evidence of a "record of impairment."

To satisfy the third prong of the definition of disability – the so-called "regarded as" prong, a plaintiff must establish that that "she has been subjected to an action prohibited under [the statute] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).  "The statute is thus meant to reach those individuals, disabled or not, who might be adversely affected by society's accumulated myths and fears about disability and disease." *Cain v. Esthetique*, 182 F. Supp. 3d 54, 66 (S.D.N.Y. 2016) (internal quotation omitted); *Hilton v. Wright*, 673 F.3d 120, 129 (2d Cir. 2012) (holding that, in light of ADAAA, to survive summary judgment plaintiff bringing "regarded as" claim "[is] only required to raise a genuine issue of material fact about whether [the defendant] regarded [her] as having a mental or physical impairment" and need not "present evidence of how or to what degree [the defendant] believed the impairment affected [her]").   Plaintiff has not alleged that the LIRR regard him as disabled, nor has Plaintiff presented any evidence indicating the LIRR regarded him as disabled.

Plaintiff alleges that he "had an FMLA qualifying disability and used and/or requested FMLA leave to address it." 3rd Am. Comp. ¶ 92.  However, the documents produced during discovery and attached by Plaintiff in opposition to the motion for summary judgment, indicate Plaintiff took FMLA leave to assist his wife in her recuperation from shoulder surgery and do not in any way identify a disability on Plaintiff's behalf.  *See* Pl. Opp. Ex. 13, 14.  There is no indication in the record that Plaintiff ever applied for FMLA leave for a disability of his own. Beyond that, Plaintiff does no more than claim he is disabled without providing a shred of

explanation as to what this disability might be.   Accordingly, the Court respectfully recommends that Defendant's motion for summary judgment with respect to Plaintiff's claims under the ADA, Section 504 of the Rehabilitation Act and the NYSHRL be granted.

### D.  Retaliation

Plaintiff has asserted claims for retaliation pursuant to the anti-retaliation provisions of the Title VII, the FMLA,[17] and the NYCHRL.  Defendant argues that Defendant was unaware of any racial discrimination because Plaintiff's complaints were either made to the Union and not to the LIRR or to the extent Plaintiff did complaint to the LIRR, his complaint did not mention that he was subject to racial discrimination.  Def. Mem. at 21.  Further, Defendant argues that most of Plaintiff's allegation do not qualify as adverse employment actions and to the extent the allegations do qualify there is no causal connection between Plaintiff's protected activity and any adverse employment action.  *Id*. at 23.

To establish a prima facie claim of retaliation under the Title VII and NYCHRL "a plaintiff must show: (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Marquez v. Starrett City Assocs.*, No. 13-CV-2362 (LDH) (LB), 2017 U.S. Dist. LEXIS 161800 (E.D.N.Y. Sept. 30, 2017) (citing *Sarno Douglas Elliman—Gibbons & Ives, Inc*., 183 F.3d 155, 159 (2d Cir. 1999)); *Muktadir v. Bevacco Inc.,* No. 12-CV-2184 (FB) (RER), 2013 U.S. Dist. LEXIS 113967, 2013 WL 4095411, at *3 (E.D.N.Y. Aug. 13, 2013) (applying same standard for retaliation under Title VII, NYSHRL, and NYCHRL)).  "These statutes prohibit retaliation

---

[17] As discussed above, Plaintiff's FMLA claim is time-barred.

against any employee who makes a complaint against her employer regarding any practice made unlawful by these statutes." *Ruhling v. Tribune Co.*, 2007 U.S. Dist. LEXIS 116.  Where the plaintiff fails to plead a direct link between a grievance and retaliatory action, the plaintiff can demonstrate a causal connection "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Littlejohn*, 795 F.3d at 319.

First, Plaintiff must demonstrate "participation in a protected activity known to the defendant." *Richardson v. Comm'n on Hum. Rights & Opportunities*, 532 F.3d 114, 123 (2d Cir. 2006).  According to Plaintiff, the following actions on his part should be considered protected activity:

- Plaintiff filed a negligence suit against the LIRR for injuries sustained while on the job in 2009 (3rd Am. Compl. ¶ 21);
- complained to the Union about being required to clean trains in September 2010 (3rd Am. Compl. ¶ 28);
- complained to Road Car Inspector Michael Pairan regarding the perceived workplace harassment in January 2012 (3rd Am. Compl. ¶ 45); and
- in March 2012 had the Union challenge the LIRR's refusal to change his disability status from D/S to D/A status because gang foreman Wittneben was "harassing him and causing this stress by changing his job assignment and not allowing him to take his 15 minute breaks that he is entitled to [and] he also feels that he is being singled out by his superior and has been taken off assignments."

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Bryant v. Verizon Commc'n Inc*., 550 F. Supp. 2d 513, 537 (S.D.N.Y. 2008) (citing *Cruz*, 202 F.3d at 566).  "The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." *Aspilaire v. Wyeth Pharms., Inc*., 612 F. Supp. 2d 289, 308-09 (S.D.N.Y. 2009) ("While plaintiff may have believed that she was the victim of discrimination, an undisclosed belief of such treatment will not convert an ordinary employment complaint into a protected activity") (citation omitted) (citing *Dinice-Allen v. Yale-New Haven Hosp*., No. 06 Civ. 00675 (PCD), 2008 U.S. Dist. LEXIS 1802, 2008 WL 160206, at *4 (D. Conn. Jan. 10, 2008)).  Here, Plaintiff has not asserted that he mentioned racial discrimination in any of his complaints regarding gang foreman Wittneben's behavior. Therefore, Plaintiff has failed to establish a prima facia case of retaliation and I respectfully recommend that Defendant's motion for summary judgment with respect to Plaintiff's claims of retaliation be granted.

Moreover, other than with respect to his termination, Plaintiff has not alleged an adverse employment action, which in the context of a Title VII retaliation claim, "'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72, 90 (2d Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S. Ct. 2405, 2409, 165 L. Ed. 2d 345 (2006)).  Further, the Court notes that Defendant has proffered a non-retaliatory reason for its termination of Plaintiff.  It is undisputed that Plaintiff received five notices of violation of Defendant's absence control policy and ultimately was terminated as a result of those violation.  As discussed above, this termination was reviewed by a neutral arbitration panel and Plaintiff's termination was upheld.

42

In light of the foregoing, the undersigned respectfully recommends that Defendant's motion for summary judgment with respect to Plaintiff's claim of retaliation (Counts IV and X) be granted.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Such objections shall be filed with the Clerk of the Court via ECF, except in the case of a party proceeding *pro se*. *Pro se* Plaintiff Dominique Phillips must file his objections in writing with the Clerk of the Court within the prescribed time period noted above. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir.2 008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision."). Counsel for Defendant is directed to serve a copy of this Order upon *pro se* Plaintiff forthwith and file proof of service on ECF.

Dated: Central Islip, New York         **SO ORDERED:**
       March 4, 2019

                           _____/s/_____
                           ARLENE ROSARIO LINDSAY
                           United States Magistrate Judge